RICHARD CROKER, JR., Plaintiff, *v.* THE NEW YORK TRUST COM-
PANY, as Temporary Administrator of the Goods, Chattels and
Credits which Were of RICHARD CROKER, Deceased; HOWARD
CROKER and ETHEL C. WHITE, Defendants.

Supreme Court, New York Special Term, June 26, 1924.

**Executors and administrators — action to compel payment of certain
share of decedent's estate for benefit of plaintiff's brother and sister —
failure of decedent to turn over moneys to plaintiff's brother and sister
on plaintiff's assignment of his share of his mother's estate to decedent
— court permitted in equitable action to adopt, modify or disregard
findings of jury in accordance with evidence — findings of jury sup-
ported by fair preponderance of proof and should not be disturbed —
plaintiff, in any civil case, only required to establish his claim by fair
preponderance of evidence — plaintiff competent to testify under
Civil Practice Act, § 347, as to conversations had with father which
culminated in agreement.**

The defendant, serving as temporary administrator of a decedent's estate, will
be compelled, in an equity action by the plaintiff, suing as a nominal party for
the benefit of his brother and sister, to pay a certain share of their father's estate
to plaintiff for the benefit of his brother and sister, where it appears that there
was a fair preponderance of proof to support the findings of the jury that the
plaintiff and the decedent made a contract whereby the decedent agreed to
turn over certain sums of money to the plaintiff's brother and sister if the plain-
tiff would assign his own share in his mother's estate to the decedent and that
the decedent failed to perform in keeping with the agreement.

In an equitable action the court is permitted to go into the record, to look beyond
the jury's findings and adopt, modify or disregard them entirely and determine
the case in accordance with the evidence. Consequently, where the court
concurs in the jury's determination the verdict should not be disturbed.

There is no distinction in the character of proofs required in an action against
a decedent's estate and any other civil action. The rule in any civil action
is that the plaintiff must establish his claim by a fair preponderance of
the evidence.

The plaintiff is competent to testify as to certain conversations had with his
father, the decedent, which culminated in the agreement, since he is not a party
interested in the outcome of the action and the real parties in interest did not
derive their title from, through or under him within the meaning of section 347
of the Civil Practice Act.

ACTION to compel the defendant trust company, as temporary
administrator, to pay plaintiff a certain share of decedent's estate
for the benefit of third parties.

*McCombs & Ryan (Max D. Steuer* and *Frederick R. Ryan,* of
counsel), for the plaintiff.

*Cook, Nathan & Lehman (Edward L. Mooney* and *Frank I.
Tierney,* of counsel), for the defendant trust company.

LEVY, J. This action was begun by plaintiff to compel the defendant New York Trust Company, as temporary administrator of the estate of Richard Croker, deceased, to pay to the defendants Ethel Croker White and Howard Croker, children of said decedent, each the sum of $76,686.15 with interest. Upon motion made and granted certain issues were framed and submitted for trial by a jury which found that the decedent, in consideration of the assignment by Richard Croker, Jr., the plaintiff herein, of his share in the estate of his deceased mother to his brother Howard, would, as soon as plaintiff ascertained and informed him of such share, pay to Ethel C. White and Howard Croker, each, a like sum. The jury also found that the decedent had not carried out his agreement. The administrator then moved to set the verdict aside on two grounds: (1) That the verdict was against the weight of evidence and that the jury's findings in an action of this nature — in equity — were not binding and thus the court was at liberty to accept or reject the jury's determination; (2) that the plaintiff under section 347 of the Civil Practice Act (formerly section 829 of the Code of Civil Procedure) was not qualified to testify as to certain conversations had with the decedent. The trial court denied the motion and held that the verdict of the jury was amply supported by the record and that the plaintiff, not being a party interested in the outcome of the action within the purview of said statute, was not inhibited from testifying at the trial.

Before me the issues submitted for determination included the one having to do with the value of the plaintiff's share in the residue of the estate of Elizabeth Croker, his mother. Of course, the record containing the testimony taken on the trial of the framed issues was introduced in evidence and additional proof was offered in connection with the agreement, which the plaintiff asserted had been made with his father.

On this trial, as on the trial before Mr. Justice Proskauer, it was urged by the defendant administrator that the plaintiff was not a proper witness; that the verdict of the jury was against the weight of evidence; that in the light of the additional testimony it clearly appeared that no agreement had been consummated between the plaintiff and the decedent; and that in any event the jury's finding was not conclusive but merely advisory to the court.

The plaintiff proved without dispute the value of his one-fourth interest in the estate of Elizabeth Croker, deceased, to be $76,191.15. The computation of interest was submitted showing that upon each share from November 1, 1915, to March 25, 1924, it amounted to $38,396.14. Ethel Croker White and Howard Croker if entitled to prevail should recover interest from November

1, 1915. Plaintiff ascertained the value of his share in his mother's estate and informed the decedent on that day, of the said sum. It was determined from the transfer tax proceedings. The amount was fixed and definite, and the case comes within the rule laid down in *Faber* v. *City of New York*, 222 N. Y. 255. In that case the court said (at p. 262): " The question of the allowance of interest on unliquidated damages has been a difficult one. The rule on this subject has been in evolution. To-day, however, it may be said that if a claim for damages represents a pecuniary loss, which may be ascertained with reasonable certainty as of a fixed day, then interest is allowed from that day. The test is not whether the demand is liquidated. Was the plaintiff entitled to a certain sum? Should the defendant have paid it? Could the latter have determined what was due, either by computations alone or by computations in connection with established market values, or other generally recognized standards? (*Van Rensselaer* v. *Jewett*, 2 N. Y. 135; *McMahon* v. *N. Y. & Erie R. R. Co.*, 20 N. Y. 463; *Gray* v. *Central R. R. of N. J.*, 157 N. Y. 483)." See, also, *Blackwell* v. *Finlay*, 233 N. Y. 361.

Thus the total of each share claimed amounted to $114,587.29, and if contesting defendant's contentions are not upheld, and the verdict of the jury is found to be proper, plaintiff is entitled to recover for the benefit of his brother and sister the sum of $229,174.58..

A careful examination of the record which contains the evidence adduced at the trial on the framed issues; consideration of the additional testimony introduced before this court, and a study of the exhibits, lead to the conclusion that the findings of the jury were not against the weight of evidence but on the contrary each and every finding was supported by a fair preponderance of proof. It would be productive of little result to enter into a detailed discussion of the testimony. I am satisfied, however, that the plaintiff and the decedent came to a contract whereby the latter agreed to turn over the certain sums of money to Ethel Croker White and Howard Croker if the plaintiff would assign his share in his mother's estate to the latter, and that the decedent failed to perform in accordance with this agreement.

In this connection, I am not unmindful of the argument advanced by the defendant administrator that this court is not bound by the findings of the jury. These, concededly, are solely advisory to the court. *Di Menna* v. *Cooper & Evans Co.*, 220 N. Y. 391. In the case of *McClave* v. *Gibb*, 157 N. Y. 413, 420, the Court of Appeals correctly states the rule to be: " * * * Where the party is not entitled, as of right, to a trial by jury, the verdict is not conclusive

upon the parties and the trial court may adopt it, modify it or disregard it and find the facts anew." In other words, in an equitable action as this one, the court is permitted to go into the record, to look beyond the jury's findings, adopt them, modify them or disregard them entirely, and determine the case in accordance with the evidence as presented. The fact is, however, that I concur in the jury's determination. For that reason the verdict should not be disturbed. But the defendant administrator argues that the weight of evidence should preponderate to a greater degree in favor of a party prevailing in an action against a decedent's estate than in other civil actions. This is not the rule. The courts thus far have not seen fit to draw any distinction, in the character of the proofs required in the two kinds of cases. *McKeon* v. *Van Slyck*, 223 N. Y. 392; *Ward* v. *N. Y. Life Ins. Co.*, 225 id. 314, 322; *Caldwell* v. *Lucas*, 233 id. 248, 254. " The rule in any civil case is that the plaintiff must establish his claim by a fair preponderance of evidence. He need do no more than this if his claim deals with a dead person; he cannot do less if he is attacking the rights and property of a living person. The general rule as to weight and quality of evidence is no different in one case than in the other." *Ward* v. *N. Y. Life Ins. Co.*, *supra*, 322.

The plaintiff, over the objection and exception of counsel for the defendant administrator, was permitted to testify to certain conversations had with his father which culminated in the said agreement. He urges that he is a competent witness in view of the fact that he is not a party interested in the outcome of the action and that the real parties in interest did not derive their title from, through or under him. Defendant's position, however, is that the plaintiff is a party interested in the outcome of the action particularly since he is liable to the payment of costs, and that in any event the title of the defendants Ethel Croker White and Howard Croker is derived directly from the plaintiff.

Section 347 of the Civil Practice Act is as follows:

" § 347. Personal transaction or communication between witness and decedent or lunatic. Upon the trial of an action or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest against the executor, administrator or survivor of a deceased person or the committee of a lunatic, or a person deriving his title or interest from, through or under a deceased person or lunatic, by assignment or otherwise, concerning a personal trans-

action or communication between the witness and the deceased person or lunatic, except where the executor, administrator, survivor, committee or person so deriving title or interest is examined in his own behalf, or the testimony of the lunatic or deceased person is given in evidence, concerning the same transaction or communication. A person shall not be deemed interested for the purposes of this section by reason of being a stockholder or officer of any banking corporation which is a party to the action or proceeding, or interested in the event thereof."

It thus appears that a party is prevented from testifying (1) who is interested in the event; (2) or the person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise. There are two kinds of interest — " a direct and certain interest in the event of the cause or an interest in the record for the purpose of evidence. * * *." *Eisenlord* v. *Clum*, 126 N. Y. 552, 556. These interests become necessary in order to exclude. *Hobart* v. *Hobart*, 62 N. Y. 80, 83; *Moore* v. *Oviatt*, 35 Hun, 216, 219. Undoubtedly plaintiff has no interest in the outcome of the action for he stands to gain or lose nothing either way, and certainly his interest is not of a financial nature. In order to be thus disqualified he must have a financial interest and that interest must be certain. In *Harrington* v. *Schiller*, 231 N. Y. 278, the court said (at p. 285): " * * * The evidence of Myrna on behalf of plaintiff was not prohibited merely because she was a party or because she had an interest in the decision of the litigation. The prohibition in this case could only rest successfully on the circumstance that she had a financial interest in the event of the litigation which would be supported and forwarded by the testimony which she proposed to give, so that if permitted to give it she would be testifying in her own behalf or interest. Prohibition of evidence cannot be predicated upon a character thereof which destroys rather than promotes the interests of him who gives it (*Matter of Kindberg*, 207 N. Y. 220, 226; *Albany Co. Sav. Bank* v. *McCarty*, 149 N. Y. 71, 84; *Carpenter* v. *Soule*, 88 N. Y. 251, 258; *Matter of Lasak*, 131 N. Y. 624.) "

Since the plaintiff has no financial interest in the outcome of the action he cannot be said to be a party who is interested in the event. Nor does the possibility that he may be taxed with costs if there is an adverse decision make him interested in the action. This being an action in equity, no costs whatever need be awarded to any party. It is fully within the discretion of the court.

The witness has no interest in the record. He cannot in any manner, from the evidence disclosed, avail himself of its use for the purpose of any contemplated action. By this contract plaintiff

personally was to receive nothing; moreover, if it were not carried out he could not be called upon to pay a single cent, to the decedent or his estate. He could not recover in any action against such decedent or estate, by reason of the decedent's breach of the contract, especially so as he had suffered no pecuniary loss. 1 Williston Cont. 683, § 357.

Did Ethel Croker White and Howard Croker derive their interest or title from, through or under the witness? If they did, the plaintiff becomes a party interested and would then be disqualified. It is the contention of the witness that he is merely acting in the capacity of a plaintiff for the benefit of Ethel Croker White and Howard Croker. There seems to be no question as to that. He appears to be suing merely as a nominal party. Defendant administrator, however, relying on the case of *Rosseau* v. *Rouss*, 180 N. Y. 116, argues that the interest of the beneficiaries of the contract, Ethel Croker White and Howard Croker, comes directly through the plaintiff. This is not the case.

In *Healy* v. *Healy*, 55 App. Div. 315; affd., 166 N. Y. 624, it appeared that a mother surrendered her infant child to a man upon the latter's parol agreement to care for and maintain the child as his own, to give her his name, and the same share in his estate as though she had been his child. After the contract had been fully performed by both parties for a period of years, the foster father died without making provision for the child. In an action brought thereafter by the child, the mother was called as a witness and an objection interposed on the ground that she was inhibited by section 829 of the Code of Civil Procedure. The court held otherwise. Adams, P. J., writing for the court, said (at p. 320): " Mrs. Chichester [the witness] was in no disqualifying sense 'interested in the event' of the action (*Eisenlord* v. *Clum*, 126 N. Y. 552; *Connelly* v. *O'Connor*, 117 id. 91), and while she was undoubtedly the medium through whom the contract was entered into on behalf of her infant child, yet it cannot be said that she is the person ' through or under whom ' the plaintiff derives her interest or title ' by assignment or otherwise ' as that term is used in the section above mentioned."

The subject-matter in that action was the estate of Joshua Healy and whatever interest the child had in that estate was derived from said Joshua Healy and not from her mother. So in the case at bar. The beneficiaries, Ethel Croker White and Howard Croker, derived their interest from Richard Croker, Sr., and not from, through or under Richard Croker, Jr., the plaintiff herein, and while obviously he was the medium through whom the contract was arrived at, he was not the party from, through or under whom

they derived their interest. Furthermore, and this is a very compelling consideration, these beneficiaries were parties to the contract, the jury so held, and I concur in that result, and the promise was made directly to them as well as to the plaintiff.

In the case of *Bouton* v. *Welch*, 170 N. Y. 554, the action was brought against a husband and wife by the executor of a decedent to foreclose a mortgage given by the husband to secure the price of a farm purchased by him from such decedent, in which the wife claimed, as a defense, that the mortgage was to be her property after the decedent's death. The husband was permitted to testify at the trial. Werner, J., writing for the court, said in language peculiarly apropos of this case (p. 557): " Her title was not a derivative one secured from, through or under the husband, but was clearly an original and independent title, so far as her husband was concerned, which she derived from her uncle. * * * It does not follow, as has been suggested, that because the husband's obligation to provide for the wife is a sufficient legal consideration to support the promise of a third person for the benefit of the wife, the fruit of such promise is derived ' from, through or under ' the husband. On the contrary, there are many cases in which the product of the promise is property in which the husband never would or could have any interest whatever. In such a case the law simply makes use of the husband's obligation to provide for the wife in order to enforce the promise; but the promise, as well as the property, proceeds from the third person directly to the wife and the latter receives ' from, through or under ' him, and not ' from, through or under ' the husband." This seems to leave no doubt that in the instant case the beneficiaries of the contract derived their interest not from, through or under the plaintiff but directly from the decedent, the promisor in the agreement.

That the rule just enunciated is the correct one and grounded in good reason and sound juridical interpretation is indicated by the comparatively recent decision of the Court of Appeals in the case of *Ward* v. *N. Y. Life Ins. Co.*, quoted *supra* on another point, in which Hiscock, Ch. J., in construing the words " a person deriving his title or interest from, through or under the deceased person," said (p. 319): " * * * we do not think that a person claiming money directly from an insurance company by virtue of a designation under a policy can be said to be claiming ' from, through or under ' the insured in said policy even though the latter made the designation * * *. The great body of authority makes it plain, by inference at least, that when section 829 speaks of deriving title or interest from, through or under a deceased person it contemplates property or an interest which belonged to the deceased in his life-

time and the title to which has passed by assignment or otherwise through him to the party who is protected by the section."

Whatever right or power the beneficiaries possess comes directly from the promisor and the interest to which they succeed is the interest of the decedent. That they can sue in their own name is supported by an overwhelming weight of authority. *F. N. Bank* v. *Chalmers*, 144 N. Y. 432; *Seaver* v. *Ransom*, 224 id. 233; *De Cicco* v. *Schweizer*, 221 id. 431; 27 Yale L. J. 1008.

But it may be argued they did not sue in their own name. This was made unnecessary by the action of the plaintiff. In seeking to vindicate an agreement made with him, he chose to bring them in as parties defendant. So, they are before the court, and it matters not whether on the one side or the other of this litigation. This is equity.

Finally, let us come to a consideration of the case of *Rosseau* v. *Rouss, supra,* upon which the defendant administrator so confidently relies. In that case an infant sued the estate of his putative father upon a contract made with his mother whereby in consideration of a promise by the latter that she would care and provide for the support of the child for a fixed period, the father would settle the sum of $100,000 on such child. The mother was permitted to testify at the trial. The Court of Appeals here held that she was an incompetent witness. This case, in my judgment, is by no means controlling. In the first place, the court gave expression to alarm over what appeared to be a rather grave question of public policy. But, aside from this, the fundamental difference seems to be, that the promise in the instant case was made *to and in the presence* of the parties to be benefited. This point was emphasized by the court in indicating its reasons why it declined to follow the *Bouton* and another case, both likewise determined in the Court of Appeals. There are additional distinguishing features that might be pointed out but I do not consider it needful to labor in this direction, as a reading of that case makes apparent the difference.

My conclusion is, therefore, that this plaintiff is entitled to prevail for and in behalf of the defendants other than the defending administrator and judgment is ordered accordingly, in the sum of $229,174.58. Submit findings and decree in conformity with this decision.

**Judgment accordingly.**